UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| KEVIN ALMY, | Case No. 3:13-cv-00645-MMD-VPC |
| Plaintiff, | ORDER |
| v. | |
| R. BANNISTER, et al., | |
| Defendants. | |

I.   **DISCUSSION**

Plaintiff, who is a prisoner in the custody of the Nevada Department of Corrections ("NDOC"), has submitted an 85-page civil rights complaint pursuant to 42 U.S.C. § 1983 and has filed an application to proceed *in forma pauperis*, a motion for temporary restraining order, and a motion for preliminary injunction. (Dkt. no. 1, 1-1, 3, 4.) The Court will address the application to proceed *in forma pauperis* and screen the civil rights complaint[1] pursuant to 28 U.S.C. § 1915A in a separate order. The Court

---

[1] In his civil rights complaint, Plaintiff files a lawsuit against multiple defendants for events that took place while he was incarcerated at Warm Springs Correctional Center ("WSCC"), Northern Nevada Correctional Center ("NNCC"), and Southern Desert Correctional Center ("SDCC"). (Dkt. no. 1-1 at 1.) Plaintiff alleges five counts against Defendants Grievance Responder R. Bannister, SDCC Associate Warden Cheryl Burson, NDOC Director Greg Cox, Jane Doe (NNCC Nurse), John Doe (SDCC Sgt.), WSCC Correctional Officer Eric Fancher, NDOC Deputy Director S. L. Foster, NNCC Postmaster Gibson, SDCC Caseworker Haines, WSCC Correctional Officer Brandt Halling, Nevada Attorney General Catherine Cortez Masto, WSCC Associate Warden Wesley Mattice, WSCC Correctional Officer Veronica Meza, Medical Staff Perez, NNCC Director of Nursing Services John B. Perry, SDCC Caseworker Rayborn, WSCC Warden Greg Smith, SDCC Law Library Supervisor R. Smith, SDCC Sgt. Stephen Torsky, WSCC Correctional Officer Ruben Vidaurri, NDOC Responder M. Whittington, and SDCC Warden Brian Williams, Sr. (*Id.* at 2-9).

now addresses Plaintiff's motions for a temporary restraining order and preliminary injunction. (Dkt. no. 3, 4).[2]

Plaintiff alleged the following in his motion for temporary restraining order/preliminary injunction: On September 10, 2012, Plaintiff had discussed his safety concerns with SDCC caseworkers Haines and Rayborn regarding his cell mate Robert Craner. (Dkt. no. 3 at 8.) Later that month, Craner, a member of the Aryan Warriors, attacked Plaintiff. (*Id.*) From September 23, 2012 through December 5, 2012, Plaintiff was held in a protective custody unit across from Craner where Craner threatened Plaintiff and told Plaintiff that Plaintiff "wouldn't be safe anywhere from [Craner's] fellow [Aryan Warrior] brothers" and that they would "bash [Plaintiff's] head in for reporting [Craner]." (*Id.*) On December 5, 2012, Plaintiff learned that he would be transferring to Lovelock Correctional Center ("LCC"). (*Id.* at 9.) Craner learned of Plaintiff's pending transfer and told Plaintiff that he would notify his Aryan Warrior brothers at LCC where Plaintiff was. (*Id.*)

Plaintiff alleged that throughout 2013, he filed multiple grievances against LCC prison medical staff and that, in retaliation for filing those grievances, prison officials transferred him back to SDCC on January 13, 2014. (*Id.* at 9-10.) Plaintiff alleged that during the move, prison officials refused to transfer Plaintiff's legal boxes which contained his research for an appeal brief due on February 10, 2014. (*Id.* at 10.) Plaintiff alleged that SDCC officials knowingly and maliciously "co-celled" Plaintiff with Lorne Clark, an Aryan Warrior, who claimed to have stabbed nine inmates and had a California sentence of 56 years awaiting him after his 8-year sentence in the NDOC. (*Id.* at 11.) Plaintiff alleged that he is presently in extreme fear that Clark, a 25-year old Aryan Warrior, will learn that Plaintiff reported Craner 13 months prior. (*Id.*) Plaintiff alleged that other inmates at SDCC knew that Plaintiff had reported Craner and that it was a matter of time until Plaintiff was "exposed." (*Id.*)

---

[2]Plaintiff's motion for temporary restraining order and motion for preliminary injunction are identical. (*See* dkt. no. 3, 4).

2

Injunctive relief, whether temporary or permanent, is an "extraordinary remedy, never awarded as of right." *Winter v. Natural Res. Defense Council*, 555 U.S. 7, 24 (2008). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (*quoting Winter*, 555 U.S. at 20). Furthermore, under the Prison Litigation Reform Act ("PLRA"), preliminary injunctive relief must be "narrowly drawn," must "extend no further than necessary to correct the harm," and must be "the least intrusive means necessary to correct the harm." 18 U.S.C. § 3626(a)(2).

Prisoners have a First Amendment right to file prison grievances and to pursue civil rights litigation in the courts. *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2004). "Without those bedrock constitutional guarantees, inmates would be left with no viable mechanism to remedy prison injustices. And because purely retaliatory actions taken against a prisoner for having exercised those rights necessarily undermine those protections, such actions violate the Constitution quite apart from any underlying misconduct they are designed to shield." *Id.*

To state a viable First Amendment retaliation claim in the prison context, a plaintiff must allege: "(1) [a]n assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Id.* at 567-68.

Under the Eighth Amendment, prison officials have a duty to protect prisoners from violence at the hands of other prisoners. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). To establish a violation of this duty, the prisoner must establish that prison officials were deliberately indifferent to serious threats to the inmate's safety. *Id.* at 834. To demonstrate that a prison official was deliberately indifferent to a serious threat to the inmate's safety, the prisoner must show that "the official [knew] of and disregard[ed]

an excessive risk to inmate . . . safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference." *Id.* at 837. Prison officials may not escape liability because they cannot, or did not, identify the specific source of the risk; the serious threat can be one to which all prisoners are exposed. *Id.* at 843.

The Court finds that, based on the facts alleged in the present motion, Plaintiff arguably states a colorable claim for First Amendment retaliation and Eighth Amendment failure to protect. Furthermore, the Court finds that based on the nature of Plaintiff's allegations, Plaintiff could likely suffer irreparable harm by his current cell mate. As such, the Court orders the Attorney General's Office to advise the Court within five (5) days of the date of the entry of this order whether it will enter a general notice of appearance on behalf of Defendants. Additionally, based on the nature of the allegations, Defendants shall also have five (5) days from the date of this order to file their response to Plaintiff's motion for temporary restraining order/preliminary injunction.

## II. CONCLUSION

For the foregoing reasons, it is ordered that the Attorney General's Office shall advise the Court within five (5) days of the date of entry of this order whether it can accept service of process for the named Defendants and enter a general appearance. In its notice, the Attorney General's Office shall advise the Court and Plaintiff of: (a) the names of the Defendants for whom it accepts service; (b) the names of the Defendants for whom it does not accept service, and (c) the names of the Defendants for whom it is filing last-known-address information under seal. As to any of the named Defendants for whom the Attorney General's Office cannot accept service, the Office shall file, under seal, the last known address(es) of those defendant(s) for whom it has such information.

It is further ordered that Defendants shall file a response to Plaintiff's motion for temporary restraining order/preliminary injunction (dkt. no. 3, 4) within five (5) days of the date of entry of this order.

It is further ordered that the Clerk of the Court shall electronically serve a copy of this order, a copy of Plaintiff's complaint (dkt. no. 1-1), and a copy of Plaintiff's motion for temporary restraining order/preliminary injunction (dkt. no. 3, 4) on the Office of the Attorney General of the State of Nevada, attention Kat Howe.

It is further ordered that the Clerk of the Court shall not file the complaint at this time, as the Court will screen the complaint in a separate order.

DATED THIS 31st day of January 2014.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE