# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

KEVIN ALMY,

               Plaintiff,

   v.

R. BANNISTER, *et al.*,

               Defendants.

3:13-cv-00645-MMD-VPC

## REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is defendants' motion for summary judgment (#156), plaintiff's opposition (#192), and defendants' reply (#193). Also before the court is plaintiff's motion for a temporary restraining order ("TRO") (#197) and defendants' opposition (#201). Having thoroughly reviewed the record and papers, the court recommends that defendants' motion for summary judgment be granted in part and denied in part, and that plaintiff's motion for a TRO be denied.

## I.  PROCEDURAL HISTORY

Kevin Almy ("plaintiff") is an inmate in the custody of the Nevada Department of Corrections ("NDOC") and is presently incarcerated at Northern Nevada Correctional Center ("NNCC"). In addition to NNCC, some of the events giving rise to this case transpired at Southern Desert Correctional Center ("SDCC") and Warm Springs Correctional Center ("WSCC") where plaintiff was previously held. Plaintiff proceeds *pro se* and, pursuant to 42 U.S.C. § 1983, has filed an 85-page civil rights complaint (#10) asserting a variety of constitutional claims against NDOC, NNCC, SDCC, and WSCC officials (collectively, "defendants") in their individual and official capacities. Plaintiff seeks declaratory and injunctive relief and monetary damages.

On February 7, 2014, the District Court screened the complaint and allowed the following claims to proceed. In count I, plaintiff alleges violations of his First Amendment rights based on

retaliatory actions taken against him by Veronica Meza ("Meza"), Ruben Vidaurri ("Vidaurri"), Eric Fancher ("Fancher"), Brandt Halling ("Halling"), Margaret Whittington ("Whittington"), Wesley Mattice ("Mattice"), Greg Smith ("G. Smith"), Sheryl Foster ("Foster"), Cheryl Burson (Burson"), Greg Willis ("Willis"), Tanya Hill ("Hill"), Brian Williams, Sr. ("Williams"), James Cox ("Cox"), Rashonda Smith ("R. Smith"), Robert Bannister ("Bannister"), Stephen Torsky ("Torsky"), Susan Steward ("Steward"), Edward Gibson ("Gibson"), Mr. Perez ("Perez"), and John Peery ("Peery").[1]   In count II, plaintiff alleges that Burson, Vincent Hain ("Hain"), Vincent Rabourn ("Rabourn"), Hill, and Foster violated the Eighth Amendment by failing to protect him from a serious safety risk.  In count III, plaintiff alleges violations of his First Amendment right of free speech against Edward Gibson ("Gibson"), Mr. Perez ("Perez"), and John Peery ("Peery"). Finally, in count IV, plaintiff alleges that Steward violated the Eighth Amendment by acting with deliberate indifference to his serious medical need.  The count I and V claims against Nevada Attorney General Catherine Cortez Masto were dismissed with prejudice.

Following a stay for informal settlement negotiations and multiple extensions of the time for discovery and to file dispositive motions, defendants moved for summary judgment on September 18, 2015.  Plaintiff filed his amended opposition on February 22, 2016, to which defendants replied on March 3, 2016.  Shortly thereafter, on April 22, 2016, defendant moved for a temporary restraining order (#197) to compel defendants to return to him two boxes of legal files.  Defendants filed a motion for an extension of time (#198) to attempt to resolve the issue, which the court

---

[1] Willis and Steward were fictitiously named "John Doe I" and "Nurse Jane Doe," in plaintiff's complaint and the screening order.

In an order issued on April 27, 2015, this court clarified that count I would proceed against Bannister even though the claims against him were not discussed in the screening order.  (#115.) The court now notes that the screening order was similarly vague with respect to the retaliation claims asserted against Torsky, Steward, Gibson, Perez, and Perry.  (*Compare* #10 *with* #9.) Because the omissions appear to be an oversight, the court assumes for the purposes of this motion that the count I claims against Torsky, Steward, Gibson, Perez, and Perry were permitted to proceed, and considers the merits of those claims in its analysis.

granted (#199).   Plaintiff subsequently filed a partial objection to the court's order (#200), and defendants replied to plaintiff's TRO motion (#201).   This report and recommendation follows.

## II.  SUMMARY JUDGMENT

### A.   Legal Standards

#### 1.   Summary Judgment

Summary judgment allows a reviewing court to avoid unnecessary trials.  *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).   The court properly grants summary judgment when the record demonstrates that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986).   "[T]he substantive law will identify which facts are material.   Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.   Factual disputes that are irrelevant or unnecessary will not be counted."  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).   A dispute is "genuine" only where a reasonable jury could find for the nonmoving party.   *Id.*   Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish a genuine dispute.  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996).   At this stage, the court's role is to verify that reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth.  *Schmidt v. Contra Costa Cnty.*, 693 F.3d 1122, 1132 (9th Cir. 2012); *Nw. Motorcycle Ass'n*, 18 F.3d at 1472.

Summary judgment proceeds in burden-shifting steps.   A moving party who does not bear the burden of proof at trial "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element" to support its case.  *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).   Ultimately, the moving party must demonstrate, on the basis of authenticated evidence, that the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party as to disputed material facts.  *Celotex*, 477 U.S. at 323; *Orr v. Bank of*

1   *Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002).  The court views all evidence and any inferences

2   arising therefrom in the light most favorable to the nonmoving party.  *Colwell v. Bannister*, 763

3   F.3d 1060, 1065 (9th Cir. 2014).

4       Where the moving party meets its burden, the burden shifts to the nonmoving party to

5   "designate specific facts demonstrating the existence of genuine issues for trial."  *In re Oracle*

6   *Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010).  "This burden is not a light one," and requires

7   the nonmoving party to "show more than the mere existence of a scintilla of evidence. . . .  In fact,

8   the non-moving party must come forth with evidence from which a jury could reasonably render a

9   verdict in the non-moving party's favor."  *Id.* (citations omitted).  The nonmoving party may defeat

10   the summary judgment motion only by setting forth specific facts that illustrate a genuine dispute

11   requiring a factfinder's resolution.  *Liberty Lobby*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324.

12   Although the nonmoving party need not produce authenticated evidence, Fed. R. Civ. P. 56(c),

13   mere assertions, pleading allegations, and "metaphysical doubt as to the material facts" will not

14   defeat a properly-supported and meritorious summary judgment motion, *Matsushita Elec. Indus.*

15   *Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

16       For purposes of opposing summary judgment, the contentions offered by a *pro se* litigant in

17   motions and pleadings are admissible to the extent that they are based on personal knowledge and

18   set forth facts that would be admissible into evidence, and the litigant attested under penalty of

19   perjury that they were true and correct.  *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

20       **2.**     **Civil Rights Claims Under § 1983**

21       42 U.S.C. § 1983 aims "to deter state actors from using the badge of their authority to

22   deprive individuals of their federally guaranteed rights."  *Anderson v. Warner*, 451 F.3d 1063, 1067

23   (9th Cir. 2006) (quoting *McDade v. West*, 223 F.3d 1135, 1139 (9th Cir. 2000)).  The statute

24   "provides a federal cause of action against any person who, acting under color of state law, deprives

25   another of his federal rights[,]" *Conn v. Gabbert*, 526 U.S. 286, 290 (1999), and therefore "serves

26   as the procedural device for enforcing substantive provisions of the Constitution and federal

27   statutes," *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).

To state a claim under § 1983, a plaintiff must allege facts showing (1) the violation of a federally-protected right by (2) a person or official acting under the color of state law. *Warner*, 451 F.3d at 1067. A causal connection must be established by which the state actor performed an affirmative act, participated in another's affirmative act, or failed to perform an affirmative act that he or she was legally obligated to perform, and so caused the complained-of constitutional deprivation. *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). Further, to prevail on a § 1983 claim, the plaintiff must establish each of the elements required to prove an infringement of the underlying constitutional or statutory right.

In this case, defendants are each state prison officials acting within their respective capacities under state law. Plaintiff alleges violations of his constitutional rights. Thus, plaintiff has satisfied § 1983's threshold requirements and the court will proceed to analyze each of his claims. However, plaintiff's claims for damages against defendants in their official capacities are barred by the Eleventh Amendment. *Brown v. Oregon Dep't of Corrs.,* 751 F.3d 983, 988–89 (9th Cir. 2014) (citing *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984)). As a consequence, the court will consider the § 1983 claims only to the extent that plaintiff seeks declaratory and injunctive relief, as well as damages against defendants in their individual capacities. *See Thornton v. Brown*, 757 F.3d 834, 839 (9th Cir. 2013).

**B.    Discussion**

### 1.    Claims against Hain, Rabourn, Perez, and Burson

On March 18, 2015, plaintiff was notified that the claims against Hain, Rabourn, Perez, Gibson, and Burson would be dismissed without prejudice pursuant to Federal Rule of Civil Procedure 4(m) unless proof of service was filed with the clerk of court by April 17, 2015. (#87.) Gibson was timely served and joined as a defendant. (#101.) On May 13, 2015, this court issued an order to extend the deadline for service of the remaining defendants to July 13, 2015. (#127.) Because Hain and Rabourn's names were misspelled in the original Rule 4(m) notice, plaintiff was issued a second notice on January 19, 2016, and given until February 16, 2016 to file proof of service as to those two defendants. (#187.)

1    Hain, Rabourn, Perez, and Burson have yet to be served in this action.  In view of that

2    failure, the court recommends that summary judgment be entered in their favor as to all claims.

3        **2.    Count I: First Amendment Retaliation**

4    Plaintiff's count I retaliation claims span thirty-seven pages of his complaint and implicate

5    twenty defendants.  (*See* #10 at 10–47.)  For the sake of clarity, the court addresses the claims and

6    arguments in chronological order, consistent with the screening order.

7        **a.    False Charges and Reports Related to July 28, 2011 Assault**

8    Plaintiff alleges that he was assaulted by Vidaurri and Fancher on July 28, 2011.  (#9 at 4.)

9    In count I, plaintiff maintains that Meza filed false disciplinary charges against him regarding the

10   assault "in retaliation for exercising his First Amendment rights to seek redress for abuses"

11   committed against him by NDOC officials.  (#10 at 14.)  Plaintiff also alleges that Vidaurri and

12   Fancher participated in the retaliation by writing false reports to support the charges.  (*Id.* at 14.)  In

13   moving for summary judgment defendants argue that any retaliation claims against Meza, Vidaurri,

14   and Fancher relating to the July 28 incident, the disciplinary charges, and defendants' reports are

15   barred by *res judicata* because they were litigated and dismissed in an earlier proceeding, *Almy v.*

16   *Davis*, No. 2:12-cv-00129-HDM-VCF (*Almy I*).  (#156 at 8.)

17   "The doctrine of *res judicata* provides that a final judgment on the merits bars further claims

18   by parties or their privies based on the same cause of action, and is central to the purpose for

19   which civil courts have been established, the conclusive resolution of disputes within their

20   jurisdiction."  *Headwaters Inc. v. U.S. Forest Serv.*, 399 F.3d 1047, 1051–52 (9th Cir. 2005)

21   (internal quotation omitted).  *Res judicata* acts to bar a subsequent claim where there is "an identity

22   of claims, (2) a final judgment on the merits, and (3) privity between parties."  *Id.* at 1052 (internal

23   quotation omitted).

24   As here, count XV of the complaint filed in *Almy I* alleged that Meza, Vidaurri, and Fancher

25   retaliated against plaintiff by falsifying charges and reports related to a July 28, 2011 assault.

26

27

-6-

(#156-2 at 18; *Almy I*, No. 2:12-cv-00129-HDM-VCF, Doc. #6 at 68.[2])  But while the first and third elements of *res judicata* may be present, defendants overlook the requirement of a final adjudication.   Count XV was dismissed because plaintiff failed to exhaust the available administrative remedies prior to bringing suit.  (#156-3 at 6; #156-4 at 6.)  Dismissal for a failure to exhaust is without prejudice. *See Wyatt v. Terhune*, 315 F.3d 1108, 1120 (9th Cir. 2003), *overruled on other grounds by Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014).  Because dismissal without prejudice is not considered a final judgment on the merits, it does not have a preclusive effect on future actions. *Vince v. Robinson*, 103 Fed. App'x 152, 153 (9th Cir. 2004); *Heath v. Cleary*, 708 F.2d 1376, 1380 n.4 (9th Cir. 1983).  Defendants have offered no further arguments as to why a reasonable jury could not find for plaintiff.   Accordingly, Meza, Vidaurri, and Fancher are not entitled to summary judgment.

### b.        Transport to NNCC

In August 2011 plaintiff was transferred from WSCC to NNCC.  Plaintiff alleges that Vidaurri and Halling were assigned to transport him, and that in the process they deliberately destroyed plaintiff's property and lied to NNCC officials about plaintiff's behavior.  (#10 at 15–16.) Defendants counter that Vidaurri was not assigned to transport duty on August 3, the date plaintiff cites in his complaint.  (#156 at 11.)  Given plaintiff's "lack of credibility" as to the events alleged, defendants contend that no rational jury could find either Vidaurri or Halling liable of retaliation. (*Id.* at 12.)  The argument fails for two significant reasons.

First, defendants seem to suggest that the court must resolve credibility in deciding this motion and credit Vidaurri's statements over those of plaintiff.  Credibility, however, is not a proper basis for summary judgment.  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences form the facts are jury functions," and are not to be resolved by a judge in ruling on a motion for summary judgment. *Liberty Lobby*, 477 U.S. at 248.

---

[2] The court takes judicial notice of the docket in *Almy I*, No. 2:12-cv-00129-HDM-VCF.

Second, defendants failed to provide competent evidence to support their argument, which relies entirely on Vidaurri's response to plaintiff's request for admission.  (*See* #156 at 11; #156-6.)  Therein, Vidaurri denied transporting plaintiff and his property from WSCC to NNCC on August 3, 2011, and explained that "[r]ecords indicate that [he] was assigned to the Unit 4B Rover position, not transportation."  (#156-6 at 82.)  Unlike admissions, however, denials of requests for admission do not render an issue "conclusively established," nor "constitute 'materials in the record' that can be relied on in making or responding to a motion for summary judgment."  *Hicks v. Mercedes-Benz U.S. Int'l, Inc.*, 877 F. Supp. 2d 1161, 1170 (N.D. Ala. 2012) (quoting Fed. R. Civ. P. 36(b), 56(c)(1)(A)); *see also* 23 Am. Jur. 2d *Depositions and Discovery* § 204 (2016).  "A denial simply shows that the issue has not been conceded . . . ."  *Hicks*, 877 F. Supp. 2d at 1161.  For these reasons, defendants fail to meet their initial burden on summary judgment, and their motion must be denied as to this claim.

### c.   Grievances Related to July 28 - September 14, 2011 Segregation

From August 3 to September 14, 2011, plaintiff was held in segregation for the disciplinary charges Meza lodged against him.  Plaintiff challenged the segregation through a number of grievances and appeals, which Whittington, Mattice, G. Smith, and Foster rejected.[3]  (#10 at 18.)  In this action, plaintiff alleges that defendants' rejections were improper because they applied false evidence, evaded the issue, or agreed with prior decisions, and that defendants therefore aided and abetted the retaliatory efforts against plaintiff.  (*Id.*)  Defendants advance two arguments in favor of summary judgment.  First, that the link between defendants and the allegedly retaliatory actions is too tenuous to establish liability under § 1983.  (#156 at 9–10.)  Second, plaintiff must have alleged an actual injury that can be attributed to defendants' actions.  Because he exhausted available administrative remedies and initiated the present action, the grievance denials do not constitute such an injury.  (*Id.*)

---

[3] Plaintiff also named Burson for her role in answering his grievances.  However, as Burson was not served in this action, the court need not consider the allegations against her.

It is well-established that prisoners may seek redress for retaliatory conduct by prison officials under § 1983. *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2004); *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009). "Prisoners have a First Amendment right to file grievances against prison officials and be free from retaliation for doing so." *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012). Within the prison context, a retaliation claim has five elements: (1) a state actor took some adverse action against the inmate (2) because of (3) the inmate's protected First Amendment conduct, and that the action (4) chilled the inmate's exercise of his First Amendment rights and (5) did not reasonably advance a legitimate correctional goal. *Rhodes*, 408 F.3d at 567–68.

An adverse action need not be a constitutional violation itself. *Pratt v. Rowland*, 65 F.3d 802, 806 (1995). The mere threat of harm is sufficient where it would "'chill or silence a person of ordinary firmness from future First Amendment activities.'" *Watison*, 668 F.3d at 1114 (quoting Robinson, 408 F.3d at 568). A plaintiff may also plead adverse action by alleging some other harm "that is 'more than minimal.'" *Id.* (quoting *Robinson*, 408 F.3d at 568 n.11.) As such, that a particular plaintiff continued to pursue grievances or was able to file suit is not dispositive, contrary to defendants' suggestion. (*See* #156 at 10.)

Nevertheless, courts have generally concluded that the denial of a grievance or a disciplinary appeal without more does not meet the requisite threshold of adversity. Such actions are considered *di minimis*; they would not deter an inmate of ordinary firmness from partaking in future First Amendment activities. *See, e.g.*, *Dicey v. Hanks*, No. 2:14–cv–2018 JAM-AC-P, 2015 WL 4879627, at *5 (E.D. Cal. Aug. 14, 2015) ("[T]he denial of a grievance neither constitutes an adverse action that is more than de minimis nor is it sufficient to deter a prisoner of 'ordinary firmness' from further First Amendment activities."); *Kyger v. Oregon*, No. 07–481–TC, 2010 WL 5487540, at *8 (D. Or. Dec. 10, 2010) ("The denial of a grievance is a commonplace event and even an allegedly 'fraudulent response' cannot reasonably be considered to have had a chilling effect on the exercise of an inmate's First Amendment rights."); *Martin v. Woodford*, No. 1:08-cv-

-9-

1    00415-LJO-DLB (PC), 2009 WL 30300, at *6 (E.D. Cal. Jan. 6, 2009) ("Merely by ruling against

2    Plaintiff in a grievance procedure is not sufficient to allege an adverse action.").

3            Plaintiff does not allege that Whittington, Mattice, G. Smith, or Foster chilled his exercise of

4    First Amendment activities.  Instead, the harm alleged is the improper screening of grievances, the

5    failure to overturn disciplinary charges, and the denial of access to incident reports.  (#9 at 18; #192

6    at 25.)  Taking these allegations as true, however, defendants' actions amount to nothing more than

7    rejections of the requests plaintiff articulated in his grievances.  Plaintiff's discontent with certain

8    decisions does not render the harm perpetrated against him "more than minimal."  *See Watison*, 668

9    F.3d at 1114.   Therefore, because the grievance denials do not constitute sufficiently adverse

10   actions, the court recommends that summary judgment be granted with respect to the retaliation

11   claims asserted against Whittington, Mattice, G. Smith, and Foster.

12                    **d.        April 5, 2012 Transfer to SDCC**

13           Plaintiff next alleges that on April 5, 2012, WSCC officials transferred plaintiff to SDCC,

14   where he was made to co-cell with violent and mentally ill offenders, in retaliation for refusing to

15   abandon a lawsuit and for filing an emergency petition for writ of prohibition.  (#10 at 19–21; #9 at

16   5; #192 at 5.)  Defendants move for summary judgment on the grounds that plaintiff requested a

17   transfer.  Therefore, defendants reason, plaintiff cannot show the transfer was "because of" his

18   protected First Amendment activities.  (#156 at 8–9.)  Plaintiff counters that he requested a transfer

19   to Lovelock Correctional Center or NNCC, but not to SDCC.  (#192 at 6.)

20           Notwithstanding plaintiff's venue preference, the court agrees that the request for a transfer

21   undermines his allegations of a nexus between his protected activities and the transfer.  "To prevail

22   on a retaliation claim, a plaintiff must show that his protected conduct was 'the substantial or

23   motivating factor behind the defendant's conduct.'"  *Brodheim*, 584 F.3d at 1271; *see also Huskey*

24   *v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000) (retaliation claim cannot rest on "the logical

25   fallacy of *post hoc, ergo propter hoc*, literally, 'after this, therefore because of this'").

26           Assuming *arguendo* that plaintiff could show a retaliatory motive, however, his claim would

27   still fail.  Plaintiff does allege that any of the individuals named as defendants in this action were

1    involved in the transfer decision, a point he concedes in his opposition: "Although NDOC Director

2    Cox identified Clark and Deal as responsible for [the] transfer . . . [the] deadline for joining parties

3    ha[s] expired." (#192 at 5.)  To state a claim under § 1983, a plaintiff must allege a connection or

4    link between the actions of one or more of the named defendants and the violations asserted.  *See*

5    *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).  Vicarious liability is not available. *Id.*  Because

6    plaintiff has not shown a link between defendants and the transfer decision, defendants are entitled

7    to summary judgment on this issue.

8                   **e.     Deprivation of Medical Care**

9            Plaintiff alleged in his complaint that Steward withheld pain medication or other medical

10    assistance for plaintiff's rotator cuff tears between July 28 and September 8, 2011 "to punish

11    plaintiff for exercising his First Amendment rights to seek redress."  (#10 at 18–19.)  Despite

12    plaintiff's kites and frequent complaints of pain, plaintiff alleges that Steward refused to listen,

13    rushed by his cell, and provided him just 200 milligrams of ibuprofen per day.  (*Id.*)

14            Viewing the evidence in the light most favorable to plaintiff, the allegations are wholly

15    insufficient to show a genuine issue for trial.  Plaintiff alleges a retaliatory motive, but does not

16    identify the protected First Amendment activities by which Steward was motivated.  Nor does

17    plaintiff offer facts or other evidence to support his assertion.  Such "bare allegations of arbitrary

18    retaliation" are insufficient to avoid dismissal.  *See Rizzo v. Dawson*, 778 F.2d 527 n.4 (9th Cir.

19    1985); *Iqbal*, 556 U.S. at 663 ("threadbare recitals of a cause of action's elements, supported by

20    mere conclusory statements," are insufficient to state a claim).  Thus, assuming that the retaliation

21    claim against Steward survived screening, entry of summary judgment is now appropriate.

22                   **f.     Confiscation of Mail**

23            On or around October 14, 2011, plaintiff was sent a letter by or on behalf of Dr. Elkanich,

24    an outside medical provider.  Plaintiff alleges that Gibson, in his capacity as mail room officer,

25    confiscated the letter and passed it on to medical staff.  (#10 at 44.)  Perez alerted plaintiff of the

26    letter's existence and its contents.  (*Id.*)  He also advised plaintiff that inmates cannot receive mail

27    from outside providers, and that the letter would be placed in his medical file.  (*Id.*) Beginning on

October 15, 2011 plaintiff submitted kites and grievances to challenge the confiscation, to which Peery and Bannister responded.  (*Id.* at 45–47.)  Plaintiff contends that the responses "depict an intentional and willful refusal to protect the rights of inmates," as well as "deceptions contrived in complicity for purposes of preventing abusive staff from being held accountable for their crimes. Responders are literally interfering with the administration of justice. . . .  Thus they are culpable." (*Id.* at 47.)

Plaintiff's argument is unpersuasive.  In both the complaint and in his opposition to defendants' summary judgment motion, plaintiff fails to plead the five basic elements of a retaliation claim.  *See Rhodes*, 408 F.3d at 567–68.  He does not allege the exercise of any First Amendment activities, let alone submit evidence to demonstrate a causal "but-for" nexus between those activities and the alleged retaliation.  *See Neff v. Bryant*, 772 F. Supp. 2d 1318, 1323 (D. Nev. 2011).  With regard to Peery and Bannister's involvement, plaintiff also fails to demonstrate that their grievance denials amount to the type of adverse action which may sustain a retaliation claim. Finally, as Perez was never served in this action, a claim could not proceed against Perez even if a prima facie case were established.

### g.    October 11, 2012 Disciplinary Charges

Plaintiff's final retaliation claims concern disciplinary charges Burson filed against him on October 11, 2012 with regard to a letter plaintiff sent her via inter-departmental mail.  (#10 at 25; #9 at 5.)  Plaintiff alleges that the disciplinary charges were unfounded and retaliatory, and that Torsky, Willis, Hill, Williams, R. Smith, Foster, and Cox are liable for their various roles in carrying out the retaliation.  For the reasons discussed below, summary judgment is appropriate with respect to each of these claims.

Plaintiff alleges that Torsky is liable because he presided over plaintiff's disciplinary hearing, refused to hear plaintiff's evidence off innocence, and upheld one of the charges "in direct contrast to the preponderance of the evidence." (#10 at 27; #192 at 9.)  In so arguing, plaintiff's allegations bear the trappings of a due process claim.  However, procedural due process is not at issue in this action and, as a retaliation claim, the allegations fail to address a critical element.

Beyond bare assertions of bias, plaintiff presents no evidence to suggest that Torsky was motivated by plaintiff's First Amendment activities to act against him.  (*See* #192 at 10.)  Without that causal connection, the claim cannot proceed.

In addition, where a § 1983 action for damages or declaratory relief alleges constitutional violations that would imply the invalidity of an inmate's underlying conviction, sentence, or prison disciplinary hearing, the claim is not cognizable unless the conviction or sentence has been invalidated by habeas petition or a similar proceeding.  *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994); *Edwards v. Balisok*, 520 U.S. 641, 648 (1997).  Plaintiff contends that he was charged despite a lack of supporting evidence and, further, that the false charge resulted in a loss of good time credits and a longer prison sentence.  (#192 at 11, 25–26.)  Thus, taking plaintiff's allegations as true, his claim may not proceed under § 1983 unless and until he can show that the charge was overturned.

Plaintiff alleges that Willis failed to record his statements upon service of the notice of charges ("NOC") I form, and also failed to serve on plaintiff the NOC II form.  (#9 at 6, 29; #192 at 9–10.)  In the absence of the NOC II form, plaintiff's disciplinary appeal was rejected.  (#9 at 29.)  In support of his claim, plaintiff contends that the following inconsistencies appear on the NOC I and II forms: (1) the date of service on the NOC I form is incorrect; (2) the NOC II form includes just one of the two charges; and (3) the two forms were stamp filed twelve days apart.  (#192 at 10.)  Defendants contend that such evidence is insufficient to demonstrate that Willis acted because of plaintiff's exercise of First Amendment activities.  (#193 at 11–12.)[4]  The court agrees.  Viewing the evidence in the light most favorable to plaintiff, he has failed to connect Willis's handling of the NOC forms to any protected First Amendment activities in which plaintiff previously engaged.  In

---

[4] Defendants raise this argument for the first time in reply to plaintiff's opposition.  Courts disfavor new arguments raised in reply, *see Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007), but enjoy the discretion to consider and grant summary judgment upon such grounds, *Glenn K. Jackson Inc. v. Roe*, 273 F.3d 1172, 1202 (9th Cir. 2001).  Given that plaintiff presented his evidence and assertions against Willis in his opposition brief, the court's consideration of defendants' argument will not result in prejudice here.

addition, the court has serious doubts as to whether Willis's alleged role could constitute an adverse action for purposes of a retaliation claim, given that the NOC forms are just an intermediary step between the filing of charges and a disciplinary hearing.  (*See id.* at 12.)

Plaintiff alleges that Hill, R. Smith, Foster, Williams, and Cox are liable for rejecting, delaying, improperly screening, and generally "befuddling" plaintiff's grievances regarding the disciplinary charges and other matters.  (#10 at 30–43; #192 at 11–17.)  Defendants argue their actions as grievance responders do not amount to more than minimal harm for the purposes of a retaliation claim.  (#156 at 10.)  Without a doubt, plaintiff paints a picture of a grievance process that is  inefficient, exacerbating, and often opaque.  Citing *Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989), he maintains that "the intentional obstruction of an inmate's right to seek redress of grievances [i]s the type of conduct § 1983 was intended to remedy."  (#192 at 13.)  Despite some broad language, however, *Sprouse* simply permitted a plaintiff to challenge the filing of a disciplinary charge—an action not ordinarily actionable under § 1983—when the charge was filed in retaliation for a properly filed grievance.  *Sprouse*, 860 F.2d at 452.  Notably, the court did not rule that "obstruction" in the form of routine grievance denials is actionable under § 1983.  The defendants named here did not file the disciplinary charges against plaintiff and, as has been discussed, grievance denials are insufficient to support a retaliation claim.  This holds true even where the denial was unwarranted.  As plaintiff's allegations of further adverse actions are little more than unfounded and conclusory accusations, his claims against Hill, R. Smith, Foster, Williams, and Cox as grievance responders should be dismissed.

Plaintiff also seeks to impose liability on Cox for his role in supervising the grievance process: "Cox's liability [a]rises from his direct knowledge of this issue, his failure to intervene to cure specific injuries[,] and his intolerable failure to hold his subordinates accountable . . . ."  (*Id.* at 16.)  In general, government officials cannot be held liable under § 1983 for the constitutional violations of their subordinates.  *Iqbal*, 556 U.S. at 676; *Chudacoff v. Univ. Med. Ctr. of S. Nev.*, 649 F.3d 1143, 1151 (9th Cir. 2011).  An exception is made where "'the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them.'"  *Maxwell v.*

*Cnty. of San Diego*, 708 F.3d 1075, 1086 (9th Cir. 2013) (quoting *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989)).  Plaintiff alleges that he mailed a 206-page report to Cox's office, in which he chronicled defendants' actions in "rejecting, denying, and thwarting [his] grievances and appeals." (#192 at 16.)  However, plaintiff has not established any facts demonstrating that Cox was personally involved in the retaliation alleged or that Cox knew of and could have prevented the retaliatory acts *before* they occurred.  Accordingly, plaintiff's claim cannot prevail.

### 3.      Count II: Eighth Amendment Failure to Protect

On screening, the court found that count II stated a colorable Eighth Amendment claim against Burson, Hain, Rabourn, Hill, and Foster for a failure to protect plaintiff from his former cellmate, Robert Craner.  (#9 at 7–8.)  The complaint alleges that from August 23 to September 22, 2012, plaintiff celled with Robert Craner, a felon with a history of violence against inmates and prison staff.  (#10 at 49.)  Plaintiff kited Hain on September 3, 2012 to express concerns about Craner and request a move.  (*Id.*)  A few days later Hain and plaintiff spoke in Hain's office, where Hain told plaintiff that SDCC would not permit "convenience moves," and that no other options were available.  (*Id.*)  Rabourn replaced Hain as plaintiff's caseworker soon thereafter.  On September 6, 2012, plaintiff kited Rabourn regarding his safety concerns.  (*Id.* at 50.)  Rabourn, like Hain, responded that convenience moves were not an option, but added that he would submit plaintiff's name for the Senior Structured Living Program when one became available.  (*Id.*)  On September 10, 2012, plaintiff submitted an informal grievance asserting that SDCC staff threatened his physical and mental well-being by forcing him to double-cell with more dangerous inmates. (*Id.*)  Burson procedurally rejected the grievance at the informal level because plaintiff had grieved multiple issues.  (*Id.* at 50–51.)  Craner attacked plaintiff without provocation on September 22, 2012.  (*Id.*)  After the attack, Hill rejected plaintiff's grievance at the first level and denied that plaintiff had notified NDOC of any safety concerns.  (*Id.*)  Foster similarly rejected plaintiff's second-level grievance.  (*Id.*)

Defendants argue that plaintiff's kites were too vague to notify defendants of a risk of harm, that neither Hill nor Foster was notified of a threat until after the attack (#156 at 13), and that

plaintiff did not see Hain or Hill in the two months prior to the September 22 attack (#193 at 19). Therefore, defendants maintain they did not know in advance that plaintiff faced a substantial risk of harm and cannot be held liable for a failure to protect. (*Id.*)

The claims against Burson, Hain, and Rabourn are dismissed for a failure to serve, but the court must consider those asserted against Hill and Foster. The Eighth Amendment's stricture on the "unnecessary and wanton infliction of pain" also encompasses deliberate indifference to the safety of inmates. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994*).* "[H]aving stripped [inmates] of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course." *Id.* Prison officials must "'take reasonable measures to guarantee the safety of the inmates and to 'protect prisoners from violence at the hands of other prisoners.'" *United States v. Stoterau*, 524 F.3d 988, 1013 (9th Cir. 2008) (quoting *Farmer*, 511 U.S. at 832–33).

"It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834. A failure to protect claim has both an objective and a subjective element. *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005). First, the inmate must establish that officials exposed him to an objectively substantial risk of serious harm. *Lemire v. Cal. Dep't of Corrs. & Rehab.*, 726 F.3d 1062, 1075–76 (9th Cir. 2013). Second, he must prove that the officials were deliberately indifferent—that is, that they disregarded their subjective awareness of the risk without reasonable justification. *Id.* at 1074, 1078. It is not enough that prison officials were aware of facts from which they *could* have inferred the presence of an excessive risk; they must also "draw the inference." *Farmer*, 511 U.S. at 837. The culpable state of mind is "something more than mere negligence," but "something less" than purpose or intent. *Hearns*, 413 F.3d at 1040. Circumstantial evidence, or the fact that the risk was obvious, may be sufficient to establish a prison official's deliberate indifference. *Cortez v. Skol*, 776 F.3d 1046, 1050 (9th Cir. 2015) (citing *Farmer*, 511 U.S. at 842).

Plaintiff does not dispute that Foster was unaware of the risk of an attack until after the attack allegedly occurred.  Because Foster could not have disregarded a risk of harm that he lacked knowledge of, summary judgment is properly granted in his favor.  However, viewing the evidence in the light most favorable to plaintiff, Hill was apprised of some threat inherent in plaintiff's celling arrangement prior to September 22, 2012.  Plaintiff's Exhibit J (#190-10) includes excerpts of grievance log number 2006294927.  His informal grievance stated, in pertinent part:

> 16.  SDCC has subjected plaintiff to dangerous conditions of confinement by compelling double celling with a more dangerous caliber of criminal, i.e., career criminals/repeat offenders, gang members, bi-polar, schizophrenic, psychotic and other mentally ill problematic inmates who have threatened plaintiff's physical and mental being.

> 17.  Subjection to dangerous double celling is unreasonable where plaintiff has no prior felony convictions, has an exemplary prison record . . . and has multiple health maladies/disabilities.

(*Id.* at 14.)  Hill signed the rejection of the informal grievance on September 18, 2012. (*Id.*)

Defendants contend that the grievance's vague discussion of double-celling was insufficient to put them on notice.  (#156 at 12.)  Plaintiff counters that he was clearly complaining about his cellmate, and that the reference to Craner was obvious even if he did not mention him by name.  (#192 at 28.)  In addition, plaintiff maintains that he met with Hill one-on-one prior to the attack in order to discuss his safety concerns.  (*Id.* at 22, 28.)

The subjective element of a deliberate indifference claim is a fact intensive inquiry and "typically should not be resolved at the summary judgment stage."  *Lemire*, 726 F.3d at 1078.  Here, the only evidence of Hill's knowledge or lack thereof is the grievance excerpt.  Defendants did not provide sworn testimony or prison records adequate to refute the assertion that a one-on-one meeting took place.[5]  Without such evidence, a reasonable juror could infer that plaintiff's grievance and the meeting were sufficient to notify Hill of the threat plaintiff faced, and that Hill

---

[5] Defendants included Hill's Caseworker/Inmate Contact Log as an exhibit to their reply (#193-5), but all inmate names and signatures are redacted.  Without that information the document cannot support the assertion that Hill did not meet with plaintiff until August 24, 2012.

1    acted unreasonably given that knowledge. Because defendants have not carried their burden on

2    summary judgment, their motion should be rejected as it pertains to Hill's liability under count II.

3        **4.        Count III: First Amendment Obstruction of Receipt of Mail**

4            Based on the same allegations described in count I, count III stated a colorable First

5    Amendment claim against Gibson, Perez, and Peery for their role in confiscating a letter sent by Dr.

6    Elkanvich to plaintiff in October 2011. (#9 at 8.) While Perez must be dismissed, as noted above,

7    the court considers the claim as asserted against Gibson and Peery.

8            Inmates have "a First Amendment right to send and receive mail." *Witherow v. Paff*, 52

9    F.3d 264, 265 (9th Cir. 1995). However, a "'delicate balance'" must be struck between that right

10   "and the discretion of prison administrators to govern the order and security of the prison." *Sikorski*

11   *v. Whorton*, 631 F. Supp. 2d 1237, 1240 (D. Nev. 2009) (quoting *Thornburgh v. Abbott*, 490 U.S.

12   401, 407 (1989)). Prison officials enjoy greater leeway to regulate incoming mail than outgoing

13   mail due to the increased security risks inherent in materials entering a prison. *Thornburgh*, 490

14   U.S. at 413.

15           Prison policies and regulations concerning incoming mail are governed by *Turner v. Safley*,

16   482 U.S. 78 (1987). There, the Supreme Court held that a regulation which "impinges on inmates'

17   constitutional rights . . . is valid if it is reasonably related to legitimate penological interests." *Id.* at

18   89. Four factors bear on a regulation's reasonableness: "(1) whether there is a 'valid, rational

19   connection between the prison regulation and the legitimate governmental interest put forward to

20   justify it'; (2) whether there are 'alternative means of exercising the rights that remain open to

21   prison inmates'; (3) what 'the impact accommodation of the asserted constitutional right will have

22   on guards and other inmates, and on the allocation of prison resources generally'; and, (4) whether

23   the 'absence of ready alternatives is evidence of the reasonableness of a prison regulation.'"

24   *Sikorski*, 631 F. Supp. 2d at 1341 (quoting *Turner*, 482 U.S. at 89–90).

25           To justify the confiscation of plaintiff's letter defendants cite NDOC Administrative

26   Regulation ("AR") 639.02(8), which prohibits inmates from obtaining copies of their medical

27

records.[6]  (#156 at 6.)  Defendants move for summary judgment on the grounds that the regulation keeps health information confidential, as required under the Health Insurance Portability and Accountability Act, and protects inmates from blackmail or other security-related threats.  (*Id.* at 6–7.)  Plaintiff counters that defendants' AR 639.02(8) defense is unpersuasive in this case, as the letter at issue did not contain any medical records.  (#192 at 29.)  The court agrees.

Defendants concede that two letters arrived at SDCC concerning plaintiff's request for medical records.  (#193 at 18.)  The first was received in October 2011 and informed plaintiff that the requested records could not be located.[7]  (*Id.*; #156 at 6.)  The second letter—which is not the subject of plaintiff's First Amendment claim—was sent on November 2, 2011, and did include medical records.  (#192 at 29; #156-9.)  It is not clear to the court whether defendants' application of AR 639.02(8) conflates those two pieces of correspondence, or if they seek to expand the AR to prohibit all documents to mention medical records or authored by a medical practitioner.  In any event, neither strategy is persuasive.

"[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system."  *Pell v. Procunier*, 417 U.S. 817, 822 (1974).  Having concluded that AR 639.02(8) did not prevent plaintiff from receiving the October 2011 letter, the court finds that defendants have not asserted a legitimate policy justification for the impingement on his First Amendment rights.  Accordingly, Gibson and Peery are not entitled to summary judgment on this issue.

**5.    Count IV:  Deliberate Indifference**

In count IV, plaintiff alleges that Steward was deliberately indifferent to his serious medical needs between August 2 and September 8, 2011 while plaintiff was held in NNCC segregation.

---

[6] AR 639.02 governs the confidentiality of medical records.  Subsection (8) provides: "Copies of medical records will not be provided to the inmate and should be maintained in a separate file in the inmate's medical records for attachment to pleadings when directed by the staff of the Attorney General."  (#156-10 at 4.)

[7] A copy of the letter is not before the court, but the parties do not dispute that it contained no medical records.  (#193 at 18.)

(#10 at 54–55.)  Steward allegedly provided plaintiff low dosages of ibuprofen and ignored his frequent kites and other requests for relief.  (*Id.*)  Plaintiff maintains that the cortisone injections and prescribed pain relievers he later received evidence the inadequacy of this treatment.  (*Id.*)

Defendants contend that plaintiff's claim is barred by *res judicata* because it was asserted and dismissed with prejudice in *Almy I*.  (#156 at 8; #193 at 5.)  In turn, plaintiff insists that he be allowed to litigate the claim because it was dismissed for a failure "'to identify any particular member of the medical staff who knew of his serious medical need and disregarded the need for treatment,'" which was the "direct result of NDOC's blameworthy obstruction of [his] access to his medical records."  (#192 at 5, 20 (quoting #156-2 at 17).)  As plaintiff has identified Steward as liable here, he maintains that the *Almy I*'s dismissal with prejudice was "plain error."  (*Id.* at 21.)

*Res judicata* bars a subsequent claim where there is "an identity of claims, (2) a final judgment on the merits, and (3) privity between parties."  *Headwaters Inc.*, 399 F.3d at 1052 (internal quotation omitted).  All three elements are present in this case.

To determine whether two suits involve the same claim, courts consider four criteria:

(1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether the two suits involve infringement of the same right; (3) whether substantially the same evidence is presented in the two actions; and (4) whether the two suits arise out of the same transactional nucleus of facts.

*Sidhu v. Flecto Co.*, 279 F.3d 896, 900 (9th Cir. 2002).  No rights or interests were established in the prior judgement, but the second, third, and fourth criteria are easily met.  In the instant action and in *Almy I* plaintiff asserted violations of his Eighth Amendment rights based on the deliberate indifference of NNCC medical staff from August to September 2011.  (*Compare* #10 at 54–55 *with* #156-2 at 16.)  Further, the same basic facts were offered to support the claims: staff failed to heed his requests for medical treatment, and the low dosages of ibuprofen he was provided were insufficient to relieve his pain.  (*Id.*)  An identity of claims exists between the two suits.

While plaintiff questions the validity of the *Almy I* decision, he does not dispute that the court issued a final judgment, nor could he.  Plaintiff's deliberate indifference claim against the

medical staff was "dismissed with prejudice" (#156-2 at 17), a phrase synonymous with "final judgment on the merits," *Hells Canyon Pres. Council v. U.S. Forest Serv.*, 403 F.3d 683, 686 (9th Cir. 2005).

Third, there is privity between the parties.  Although Steward was not identified by name in *Almy I*, both suits are against members of the NNCC medical staff.  "There is privity between officers of the same government so that a judgment in a suit between a party and a representative of the United States is *res judicata* in relitigation of the same issue between that party and another officer of the government."  *Fund for Animals, Inc. v. Lujan*, 962 F.2d 1391, 1398 (9th Cir. 1992); *see also Matthews v. Endel*, No. 306–CV–00401–RLH–VPC, 2009 WL 44001, at *10 (D. Nev. Jan. 5, 2009) (privity exists between NDOC employees).

Having found the requirements of *res judicata* satisfied, the court turns to plaintiff's arguments as to why his claim should proceed, and finds them unavailing.  To begin, plaintiff ignores a critical piece of the *Almy I* decision.  The court dismissed the deliberate indifference claim with prejudice not only for the failure to identify a member of the medical staff, but because plaintiff acknowledged receiving pain medication for his shoulder pain during the period at issue. (#156-2 at 17.)  A difference of opinion as to the appropriate course of treatment does not constitute deliberate indifference to a serious medical need, *Toguchi v. Chung*, 391 F.3d 1051, 1059–60 (9th Cir. 1996), and plaintiff had no constitutional right to supplemental outside medical care, *see Roberts v. Spalding*, 783 F.2d 867, 870 (9th Cir. 1986).  Amendment cannot cure those deficiencies.

The foregoing notwithstanding, plaintiff's urging to overlook the bar of *res judicata* has no support in federal law.  "The doctrine is founded on the principle that 'a judgment merely voidable because based upon an erroneous view of the law is not open to collateral attack, but can be corrected *only by a direct review* and not by bringing another action upon the same cause.'"  *Orion Tire Corp. v. Goodyear Tire & Rubber Co., Inc.*, 268 F.3d 1133, 1136 (9th Cir. 2001) (emphasis in original) (quoting *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n.4 (1981)).  The consequences of *res judicata* are no different where the prior judgment was wrong.  *Federated Dep't Stores*, 452 U.S. at 398.

Because *res judicata* bars plaintiff's deliberate indifference claim, the court recommends that summary judgment be entered in Steward's favor.

### III.      TEMPORARY RESTRAINING ORDER

**A.     Legal Standard**

Courts may grant preliminary injunctive relief pursuant to Rule 65 of the Federal Rules of Civil Procedure.  Such remedies are disfavored, as they are "extraordinary and drastic . . . [and] never awarded as of right[.]"  *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008) (internal citations omitted).   Ordinarily, preliminary injunctive relief aims to preserve the status quo pending a determination of the case on the merits.  *Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1023 (9th Cir. 2009).

The  standard  for  issuing  a  TRO  is  "substantially  identical"  to  that  of  a  preliminary injunction.  *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001); *V'Guara Inc. v. Dec*, 925 F. Supp. 2d 1120, 1123 (D. Nev. 2013).  The moving party must make several showings: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of injunctive relief; (3) the equities balance in his favor; and (4) an injunction is in the public interest.  *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008); *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).  In circumstances where the likelihood of success is uncertain because of "serious questions" relating to the merits of the case, but irreparable injury is likely and the balance of hardships "tips sharply" in the movant's favor, the Ninth Circuit also employs a "sliding scale" test.  *Cottrell*, 632 F.3d at 1134–35.  Thereunder, injunctive relief is appropriate where the other three factors weigh heavily in the movant's favor and the "costs outweigh the benefits of not granting an injunction."  *Id.* at 1133–34 (discussing *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010)).

Other considerations may apply within the prison context.  First, in contrast to a request to maintain the status quo, a request for affirmative relief faces a more stringent standard.  When "a party seeks mandatory preliminary relief that goes well beyond maintaining the status quo *pendente lite*, courts should be extremely cautious about issuing a preliminary injunction."  *Martin v. Int'l*

*Olympic Comm.*, 740 F.2d 670, 675 (9th Cir. 1984).  Thus, mandatory preliminary relief is only warranted where both the facts and the law must clearly favor the moving party and "extreme or very serious damage will result."  *Anderson v. United States*, 612 F.2d 1112, 1115 (9th Cir. 2009) (internal quotation omitted); *Park Vill. Apartment Tenants Ass'n v. Mortimer Howard Trust*, 636 F.3d 1150, 1160-61 (9th Cir. 2011).  Second, the Prison Litigation Reform Act ("PLRA") provides that, with regard to prison conditions,

> [p]reliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm.  The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity . . . in tailoring any preliminary relief.

18 U.S.C. § 3626(a)(2).  Therefore, the PLRA "operates simultaneously to restrict the equity jurisdiction of federal courts and to protect the bargaining power of prison administrators—no longer may courts grant or approve relief that binds prison administrators to do more than the constitutional minimum."  *Gilmore v. California*, 220 F.3d 987, 999 (9th Cir. 2000) (citing § 3626(a)(2)).

**B.    Discussion**

In addition to the requirements described above, the Supreme Court has observed that a preliminary injunction motion must seek relief of the "same character as that which may be granted finally."  *De Beers Consol. Mines v. United States*, 325 U.S. 212, 220 (1945).  Thus, a court may not enjoin conduct relating to "a matter lying wholly outside the issues in the suit."  *Id*.  In the context of a request for preliminary injunctive relief, the Ninth Circuit recently adopted the rule that "there must be a relationship between the injury claimed in the motion for injunctive relief and the conduct asserted in the underlying complaint."  *Pac. Radiation Oncology, LLC v. Queen's Medical Ctr.*, 810 F.3d 631, 636 (9th Cir. 2015) (citing *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994)).  Absent a sufficient "relationship or nexus, the district court lacks authority to grant the relief requested."  *Id.*

The court recommends that plaintiff's motion for a TRO be denied because it seeks a remedy for conduct outside the scope of the complaint. As discussed at length below, the claims in plaintiff's amended complaint address various violations of his First and Eighth Amendment rights in 2011 and 2012. By contrast, the preliminary injunction motion concerns two boxes of legal materials that were left behind when plaintiff was transferred from SDCC to NNCC on April 14, 2016. (#197 at 2–3.) Although all of these issues broadly relate to the extent to which defendants are honoring plaintiff's civil rights, the court believes that the motion centers on conduct entirely outside the scope of this suit. Accordingly, the relief plaintiff seeks in his complaint varies significantly from the remedy requested in the motion for a preliminary injunction. The motion is therefore improper. *De Beers Consol. Mines*, 325 U.S. at 220; *Colvin v. Caruso*, 605 F.3d 282, 300 (6th Cir. 2010) (plaintiff "had no grounds to seek an injunction pertaining to allegedly impermissible conduct not mentioned in his original complaint.").

Moreover, plaintiff's motion is moot. Defendants have informed the court that the two legal boxes were transported from SDCC and delivered to plaintiff at NNCC on May 15, 2016. (#201 at 2.) "The jurisdiction of federal courts depends on the existence of a 'case or controversy' under Article III of the Constitution. No justiciable controversy is presented where the question sought to be adjudicated has been mooted . . . ." *M.M. v. Lafayette Sch. Dist.*, 767 F.3d 842, 857 (9th Cir. 2014) (internal citation and quotation omitted). While plaintiff's displeasure with NDOC policy may remain (*see* #200 at 3), the record indicates that he now possesses the materials related to this motion and no live controversy remains. Accordingly, the court recommends that plaintiff's motion be denied, and plaintiff's partial objection to the court's order granting defendants' motion to extend time (#200) be overruled.

## IV.    CONCLUSION

Based upon the foregoing, the court recommends that defendants' motion for summary judgment be granted in part and denied in part. Under count I, defendants did not carry their burden with respect to the allegations of retaliation by Meza, Vidaurri, and Fancher following the July 28, 2011 assault, or of retaliation by Vidaurri and Halling in transporting plaintiff to NNCC. Under

count II, plaintiff raised a triable issue of fact as to whether Hill was deliberately indifferent to the risk Craner posed to plaintiff's safety.  Finally, under count III, defendants failed to carry their burden with respect to the First Amendment claims asserted against Gibson and Peery regarding their withholding of plaintiff's mail. Accordingly, defendants are not entitled to summary judgment as to those claims.

However, summary judgment is properly granted as to the remaining claims and defendants, including all claims against Burson, Hain, Rabourn, and Perez; the count I retaliation claims against Mattice, Whittington, G. Smith, Foster, Steward, Peery, Gibson, Bannister, Torsky, Hill, R. Smith, Williams, and Cox, and with respect to plaintiff's transfer to SDCC; the count II failure to protect claim against Foster; and the count IV deliberate indifference claim against Steward.

Finally, the court concludes that no basis exists for issuing the injunctive relief that plaintiff seeks.  Accordingly, plaintiff's motion for a preliminary injunction (#197) should be denied.  The parties are advised:

1.     Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt.  These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.     This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## IV.     RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that defendant's motion for summary judgment (#156) be **GRANTED** as to all claims against Burson, Hain, Rabourn, and Perez; the count I claims against Mattice, Whittington, G. Smith, Foster, Steward, Peery, Gibson, Bannister, Torsky, Hill, R. Smith, Williams, and Cox, and regarding plaintiff's transfer to SDCC; the count II claim against Foster; and the count IV claim against Steward.

**IT IS FURTHER RECOMMENDED** that defendant's motion for summary judgment (#156) be **DENIED** as to the count I claims against Meza, Vidaurri, Fancher, and Halling; the count II claim against Hill; and the count III claims against Peery and Gibson.

**IT IS FURTHER RECOMMENDED** that plaintiff's motion for a temporary restraining order (#197) be **DENIED**, and plaintiff's partial objection to the court's order (#200) be **OVERRULED.**

**DATED:** May 23, 2016.

_____
**UNITED STATES MAGISTRATE JUDGE**